**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

SAMANTHA B.,

      **Plaintiff,**

  v.                                   **Civil Action 2:25-cv-00266
Judge Michael H. Watson
Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Samantha B., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). It is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.**     **BACKGROUND**

Plaintiff applied for DIB on November 3, 2021, alleging that she was disabled beginning June 18, 2016, due to anxiety, depression, and back issues. (R. at 493–96, 508). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on October 25, 2023. (R. at 349–74). The ALJ then issued a decision denying her benefits. (R. at 13–42). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–7).

On March 18, 2025, Plaintiff filed the instant case seeking a review of the Commissioner's decision. (Doc. 1). As required, the Commissioner filed the administrative record on May 19,

2025. (Doc. 7). This matter has been fully briefed and ready for the Court's review. (Docs. 12, 13, 15).

### A. Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and her hearing testimony from the October 25, 2023, hearing, regarding her mental limitations, as follows:

> *** [Plaintiff] asserted that she has difficulty with panic attacks, driving, leaving home, night terrors, going out alone, spending time around others, remembering generally, completing tasks, concentrating, following spoken instructions, handling stress and change, and getting along with others. Ex. 3E. She estimated that she can pay attention for only five to ten minutes at a time. Ex. 3E. At the hearing, [Plaintiff] testified that she is severely limited by her nightmares because they cause significant stress and anxiety. Hearing Testimony. She testified that there are several days a week where she feels she cannot get out of bed. Hearing Testimony.

(R. at 20).

### B. Relevant Medical Evidence

The ALJ discussed Plaintiff's medical records as to her anxiety as follows:

> The records are relatively scarce with respect to this period [Through December 31, 2018]. In June 2016, the claimant presented to the emergency department with complaint of shortness of breath following a vivid nightmare. Ex. 2F at 8. On examination, she was distressed and tearful, but her respiratory findings were normal, including chest x-rays. Ex. 2F at 9, 14. However, the record does not contain further mental status examination, nor an associated diagnosis related to either her shortness of breath or mental status.***
>
> *** In September 2016, the claimant presented to the emergency department following a motor vehicle collision, where she was diagnosed with lumbar strain and anxiety. Ex. 2F at 51. She was given a dose of Ativan, as well as Flexeril and naproxen. Ex 2F at 51. However, the record does not indicate that the claimant continued to receive follow up treatment for her lumbar strain or situational anxiety related to the accident during this period. ***
>
> In January 2017, the claimant presented with complaints of anxiety and flu-like symptoms. Ex. 2F at 104–05.***
>
> *** [Plaintiff] was diagnosed with anxiety following the September 2016 motor vehicle collision. Ex. 2F at 51. On a few other occasions during the period from the

> alleged onset date through December 31, 2018, she reported anxious symptoms. Ex. 2F at 8, 259, 263. Often, however, her mental status examination findings were normal, including normal mood, affect, judgment, and behavior. Ex. 2F at 75, 106, 117, 261, 264, 270. While there is evidence that she presented as anxious, this symptom was inconsistent across the period. Ex. 2F at 54, 75.

(R. at 20–21).

### C. The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date of June 18, 2016 through her date last insured of March 31, 2022. (R. at 18). The ALJ determined that, from June 18, 2016, to December 31, 2018, Plaintiff had the following medically determinable impairments: mild sinus disease; anxiety; lumbar strain; ankle fracture; acute bronchitis; obesity; and elbow contusion. (R. at 19). The ALJ also determined that through December 31, 2018, Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments. (*Id.*). Next, the ALJ determined that from January 1, 2019, through the date last insured of March 31, 2022, Plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD"); anxiety; bipolar disorder; post-traumatic stress disorder ("PTSD"); lumbar and cervical spine degenerative disc disease; obstructive sleep apnea; and obesity. (R. at 23). The ALJ, however, found that from January 1, 2019, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. at 24).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [F]rom January 1, 2019, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could stand, walk, or balance for four hours in an eight-hour workday. She could occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl, but never

3

>climb ladders, ropes, or scaffolds or work at unprotected heights. She could occasionally push, pull, or operate foot controls with the left lower extremity. She could have no exposure to temperature extremes, weather, humidity, or atmospheric conditions, as those are rated and defined in the Selected Characteristics of Occupations ("SCO"). She could perform simple tasks without a production rate pace. She could interact occasionally with supervisors and coworkers but work duties should not require interaction with the public. She could adapt to occasional changes.

(R. at 27).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 28).

Relying on the vocational expert's testimony, the ALJ found that from January 1, 2019, through her date last insured, Plaintiff was unable to perform her past relevant work as a pawnbroker or assistant manager, retail. (R. at 34). Further relying on the vocational expert's testimony, the ALJ concluded that from January 1, 2019, through her date last insured, Plaintiff would have been able to perform light exertional, unskilled jobs that existed in significant numbers in the national economy, such as a merchandise marker, routing clerk, or small products assembler. (R. at 34–35). She therefore concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from June 18, 2016, the alleged onset date, through March 31, 2022, the date last insured (20 CFR 404.1520(g))." (R. at 36).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*

4

*v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff submits that the ALJ erred in rejecting the state agency psychological consultants' opinions that she be limited to working in a setting where there is flexibility as to scheduling breaks. (Doc. 12 at 6–12; *see also* Doc. 15). In response, the Commissioner counters that the ALJ properly evaluated the psychologists' findings in accordance with the regulations and reasonably rejected the break flexibility limitation. (Doc. 13 at 5–10).

A plaintiff's RFC "is defined as the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a)(1). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). For medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must weigh the opinion with various factors in mind. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). Among them, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2); *see*

5

*also* 20 C.F.R. § 404.1520c(c)(2) (noting the ALJ may discuss the other factors but is not required to do so).

Thus, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20–CV–1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.* at *14.

Here, David Dietz, Ph.D. evaluated Plaintiff's mental impairments as part of the initial determination on Plaintiff's claim on January 31, 2022. (R. at 376–86). As part of this review, Dr. Dietz provided an assessment of Plaintiff's mental residual functional capacity. (R. at 383–85). As relevant here, Dr. Dietz found Plaintiff had sustained concentration and persistence limitations. (R. at 383). Specifically, he noted that "[v]ariability in [Plaintiff's] psychological symptoms will impact her ability to complete a normal workday/workweek, but not to the point of causing excessive disruptions." (R. at 384). He went on to opine that Plaintiff "retains the ability to complete tasks without a sustained production pace or stringent daily quota and in a setting where there is some flexibility as to the scheduling of breaks." (*Id.*). He also found the record supported other limitations in the areas of social interaction and adaptation. (*Id.*). Jennifer Swain, Psy.D., affirmed Dr. Dietz's conclusions on reconsideration. (R. at 387–96).

Then during the October 25 hearing, the vocational expert testified about workplace breaks. She stated that a typical workday includes two 15-minute breaks, a 30-minute lunch, and occasional bathroom breaks. (R. at 370). Concerning those breaks, Plaintiff's counsel and the vocational expert had the following exchange:

6

>Counsel: Is there is any flexibility in regards to the timing and the taking of those break or are those breaks dictated by the employer mainly?
>
>Vocational Expert: Typically you work two hours, take a 15-minute break, work two hours, take a lunch break, work two hours, take another 15-minute break and work two hours and go home with occasional bathroom breaks.  However, employers are known to make accommodations for timing purposes, so that would depend on the employer in that respect.
>
>Counsel: Okay, so if the hypothetical worker . . . require[d] some flexibility in the timing of their breaks, that would, as you indicated, be an accommodation depending on the employer?
>
>Vocational Expert: Yes, it would.

(R. at 372–73 (citation modified)).

In considering the state agency psychologists' conclusions, the ALJ ultimately found their opinions "partially persuasive." (R. at 32).  Specifically, the ALJ stated,

>State agency consultants, David Dietz, Ph.D., and Jennifer Swain, found that [Plaintiff] has limitations in completing a normal workday/workweek, but not to the point of causing excessive disruptions, retains the ability to complete tasks without a production pace or stringent daily quota and in a setting where there is some flexibility as to the scheduling of breaks, has an ability to socialize with others to maintain effective social interactions with supervisors and co-workers, may perform better in a job requiring limited interactions with the general public, can adapt to routine changes in the work environment, and would not do well in a fast-paced, rapidly changing environment. Ex. 2A; 3A. These findings are partially persuasive. As discussed below, in some areas the state agency consultants did not support their findings well, although they are somewhat consistent with the longitudinal evidence.
>
>The state agency consultants did not limit task complexity at all, but limited pace, social interaction, and adaptation. Ex. 2A; 3A. However, the state agency consultants' findings are not phrased in vocationally specific or policy compliant terms. The residual functional capacity is the most that a person can do in an ordinary work environment, not an accommodated or special environment. I find that [Plaintiff] is limited to simple tasks to lower work stress associated with detailed or complex tasks; moreover, she testified that her nightmares affected her cognition in the daytime, and I further considered this statement (despite normal cognitive examinations on mental status testing) in reducing complexity. The state agency consultants precluded "sustained production pace or stringent daily quotas" and I adopted this by prohibiting a production rate pace, which is broad enough to include strict quotas without being redundant. The state agency consultants

7

> provided for "a setting where there is some flexibility as to the scheduling of breaks." [Plaintiff's counsel] adduced testimony from the vocational expert that employers schedule breaks and that they are not driven typically by the needs of the employee; though some employers are willing to do so, generally speaking, that is a workplace accommodation and not an ordinary work environment. This finding renders the state agency consultants' determination internally inconsistent because if they believed she required accommodated work they should have granted the claim. I agree with the vocational expert and the [Plaintiff's attorney] that special accommodations in breaks would preclude competitive work. However, I do not find that this limit is well supported by the state agency consultants (they explain it by noting variability in her symptoms; but this support is inadequate as it does not justify requiring special accommodated breaks versus ordinary breaks, nor it is fully consistent with the collateral record, which shows her to be alert and cooperative and does not show she is inattentive due to her variable symptoms when seen for treatment). See Ex. 3F at 5–6, 11–13, 17–29, 23–25, 29–31; 4F at 5–7, 11–13, 18–20, 25–27, 32– 35; 5F at 21–23, 27–29, 33–35. Regarding the social domain, the state agency consultants appear not to limit interaction with coworkers and supervisors at all but indicates that she "may perform better at a job requiring limited interactions with the general public." The residual functional capacity is the "most" a person can do, not where they "may perform better." That being said, the claimant does manifest social anxiety and, therefore, I limited all social interactions to decrease social stressors. Regarding adapting and managing, the state agency consultants found that she could adapt to routine changes and would not do well in a fast paced rapidly changing environment. They seem to convolute pace and adaptation to some extent here. I cannot adopt the state agency consultants' language as it is not policy compliant; however, I did limit adapting to changes to occasional to address their concerns. In sum, while I could not adopt any part of the state agency consultants' findings verbatim, I did consider them in adopting a similar range of limitations, primarily directly to reduce stressors, as managing stress is noted to be an ongoing problem for [Plaintiff]. I have done so by reducing task complexity, pace, social interactions and adapting to changes.

(R. at 32–33).

Plaintiff pushes back on the ALJ's explanation for discounting the opinion that her sustained concentration and persistence limitations require a work setting where there is some flexibility as to scheduling breaks. (Doc. 12). She argues that the ALJ's supportability and consistency evaluations as to this limitation are lacking. (*Id.*). Ultimately, the Undersigned need only address the former.

8

In evaluating the supportability of a medical opinion, an ALJ must evaluate the objective medical evidence, as well as the support for that opinion and strength of the evidence on which the medical source based their conclusions. *Stacie B. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4650, 2022 WL 1793149, at *6 (S.D. Ohio, June 2, 2022), *report and recommendation adopted*, No. 2:21-CV-4650, 2022 WL 2237057 (S.D. Ohio June 22, 2022). Only "a minimum level of articulation is needed to provide sufficient rationale for a reviewing court." *Id.* (internal quotations omitted). Nevertheless, an ALJ is required to "build an accurate and logical bridge between the evidence and [her] conclusion." *Timmons v. Comm'r of Soc. Sec.*, No. 2:19-CV-3, 2019 WL 5445510, at *3 (S.D. Ohio Oct. 24, 2019).

Concerning supportability, the ALJ began by noting that the state agency consultants provided for a limitation to a setting where there is some flexibility as to scheduling breaks. (R. at 33 (citing R. at 384)). She then summarized the vocational expert's testimony that while some employers are willing to permit a flexible break schedule, that it is a workplace accommodation. (*Id.*). The ALJ found the state agency psychologists' determination about flexible breaks "internally inconsistent" because "if they believed [Plaintiff] required accommodated work[,] they should have granted the claim." (*Id.*). The Undersigned agrees with Plaintiff that this comment is perplexing.

Under the regulations, whether a plaintiff is disabled, able to work, or able to perform regular work are issues reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i). If medical evidence touches upon these issues, the regulations provide that evidence would inherently be neither valuable or persuasive. 20 C.F.R. § 404.1520b(c). So, whether the state agency psychologists "granted the claim" appears of minimal relevance to how well the doctors supported their opinions. More importantly, it is uncertain how the state agency psychologists could have

known that an opined limitation would manifest as a work preclusive accommodation when they did not have the vocational expert's testimony in front of them. All told, the ALJ's "internal inconsistency" finding does not get at "how well a medical source's own objective findings and explanations support [their] medical opinion," which is what supportability measures. *Ford v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023) (citing 20 C.F.R. § 404.1520c(c)(1)), *report and recommendation adopted*, No. 1:22-cv-524, 2023 WL 2080159 (N.D. Ohio Feb. 17, 2023); *see also Bryan W. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-00281, 2023 WL 5847649, at *3 (S.D. Ohio Sept. 11, 2023) ("[S]upportability addresses whether a medical professional has sufficient justification for their *own* conclusions.").

Still, the ALJ's supportability analysis could rise to the level of sufficient if she expanded on the explanations the state agency psychologists presented in a way that the Undersigned could follow. *See* 20 C.F.R. § 404.1520c(c)(1). But again, the ALJ's opinion leaves more questions than it answers. Of the flexible breaks limitation, the ALJ went on to say "I do not find that this limit is supported by the state agency consultants (they explain it by noting variability in her symptoms; but this support is inadequate as it does not justify requiring special accommodated breaks versus ordinary breaks . . .)." (R. at 33). This supportability analysis stops short of connecting the evidence and the ALJ's conclusion. In essence, the ALJ states that she rejects the flexible breaks limitation because the explanation the state agency psychologists provided is inadequate. (*Id.*). And the provided explanation—variability—is inadequate because variability itself does not justify the limitation. (*Id.*). The reasoning is puzzlingly circular.

For certain, the ALJ could reject the notion that symptom variability supports a flexible break schedule. But she must explain that rejection in a way that permits meaningful review. *See*

10

*Scott K. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (noting the ALJ is obligated to "show [her] work"). As it stands, the Undersigned cannot trace the ALJ's reasoning. In other words, the ALJ has not built "an accurate and logical bridge between the evidence and [her] conclusion." *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020).

The Commissioner attempts to save the ALJ by arguing that she "directly addressed the 'supporting explanations presented' [by the state psychologists] as required by the regulations." (Doc. 13 at 8). But the regulations still require an ALJ to "provide a coherent explanation of [her] reasoning." *Kimberly S. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-310, 2022 WL 17820565 (S.D. Ohio Dec. 20, 2022) (citation omitted)); *see also Stacie B.*, 2022 WL 1793149, at *7 (S.D. Ohio June 2, 2022). The ALJ's circular supportability analysis does not meet this low bar.

What's more, this error is not harmless. Had the ALJ properly engaged with the supportability of the state agency psychologists' opinions, she may have determined that Plaintiff's RFC required work preclusive limitations. (*See* R. at 33 ("I agree with the vocational expert and the representative that special accommodations in breaks would preclude competitive work.")). At base, the ALJ's "failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)). Because the ALJ's supportability analysis does not build a logical bridge between the evidence and her conclusion, the Undersigned recommends remand.

As a final note, because a remand is recommended, the Undersigned need not address Plaintiff's assigned error about the ALJ's consistency evaluation of the state agency psychologists'

opinions.  Should this Report and Recommendation be adopted, the ALJ may consider that issue on remand if appropriate.

IV. **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

V. **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: December 19, 2025                                     /s/ Kimberly A. Jolson
                                                                                                     KIMBERLY A. JOLSON
                                                                                                     UNITED STATES MAGISTRATE JUDGE